IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK ELLISON GOBLE,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>J. E. THOMAS, Warden,<br><br>　　　　Respondent.<br>_____/ | No. 2:11-cv-0008 JAM EFB P<br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a federal prisoner without counsel seeking an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the calculation of his federal sentence by the Federal Bureau of Prisons (BOP). Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I.   Factual Background**

Petitioner is currently serving an 84-month term of imprisonment following his November 21, 2007 plea of guilty in the United States District Court for the District of Montana to a charge of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). Dckt. No. 14 at 9, 10. Petitioner's current projected release date is April 1, 2015, via good conduct time. Dckt. No. 14 at 3; Dckt. No. 19 at 3-5. At the time he filed the instant petition, petitioner was

1

incarcerated at the Federal Correctional Institution in Herlong, California (FCI Herlong).  Dckt. No. 1 at 1.  Petitioner was subsequently transferred and is currently housed in the Federal Correctional Institution in Sheridan, Oregon (FCI Sheridan).  Dckt. No. 17.

Petitioner filed his federal habeas petition in this court on January 3, 2011.  Dckt. No. 1.  Respondent filed an answer on May 12, 2011, and petitioner filed a traverse on May 27, 2011.  Dckt. No. 13, 15.

## II.     Standards of Review Applicable to Habeas Corpus Claims Under § 2241

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that his custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Federal district courts do not have the responsibility or the authority to determine the number of pre-sentence custody credits owing to a defendant at the time of sentencing.  *United States v. Wilson*, 503 U.S. 329, 333–34 (1992).  Upon arrival at a federal prison, however, the Attorney General, through the BOP, must administer a defendant's federal sentence, including calculation of the time left to be served.  *Id.* at 335.  If, after exhausting administrative review, a defendant disagrees with the BOP's calculations, he or she may seek judicial review by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *See Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008) (a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241); *Hernandez v. Campbell*, 204 F.3d 861, 864-65 (9th Cir. 2000) (same).

## III.     Proper Respondent

Previously named as respondent was Richard Ives, the Warden of FCI Herlong.  However, as explained above, petitioner is now housed in FCI Sheridan.  In a habeas challenge, "the proper respondent is the warden of the facility where the prisoner is being held." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  *See also Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973) (stating, in a habeas corpus action pursuant to 28 U.S.C.

§ 2241, "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."). Accordingly, the court now substitutes in the correct respondent, the Warden of Sheridan, where petitioner is presently incarcerated.

**IV.   Venue**

Pursuant to 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus must be brought in the district court where the petitioner is confined or in the district where he was convicted and sentenced. Venue was proper in the Eastern District of California when this action was filed because petitioner was incarcerated at FCI Herlong. Petitioner has since been transferred to FCI Sheridan, which is in the District of Oregon. However, this court may continue to exercise jurisdiction over this action, notwithstanding petitioner's transfer. *See Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) ("'[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change'") (quoting *Santillanes v. United States Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985); *accord Smith v. Campbell*, 450 F.2d 829, 834 (9th Cir. 1971) ("We hold that by reason of the fact that the petitioner and his custodian, his immediate commanding officer, were within the territorial jurisdiction of the district court at the time the petition for writ of habeas corpus was filed, the district court had jurisdiction to determine the merits of the litigation . . . subsequent involuntary removal of the petitioner from the district does not defeat that jurisdiction when those having present custody of the petitioner are subject to the process of the court").

**V.  Petitioner's Claims**

    **A. Ground One**

In his first ground for relief, petitioner claims that the BOP has miscalculated his release date because of an inaccurate determination of the date on which his federal sentence began to run. Dckt. No. 1 at 3. Petitioner's arguments are based on the interplay between the sentences he received in connection with three state criminal proceedings and the federal sentence imposed

3

on him in the instant case.

**1. Background**

On May 30, 2006, petitioner was arrested for numerous violations of Montana state law. Dckt. No. 14 at 3. He was prosecuted for those violations in three separate state criminal cases. *Id.* Petitioner was sentenced on all three cases on December 18, 2006, by Judge Ed McLean of the Montana Fourth Judicial District in Missoula County, Montana. Dckt. No. 1 at 7.

In Case No. DC-06-294, petitioner was sentenced to five years in "suitable placement" on charges of felony criminal possession of dangerous drugs; six months in a state detention facility on a charge of criminal possession of drug paraphernalia; and ten years in state prison on a charge of aggravated burglary. *Id.* at 25-26. The sentencing order provides that "Counts One, Two and Three are all suspended and the last five (5) years of Count Five are suspended." *Id.* at 26. Further, "all counts shall run concurrently with each other but consecutively to Cause Nos. DC-04-520 and DC-06-103." *Id.* Petitioner characterizes this as "essentially a five year sentence." *Id.* at 7.

In Case No. DC-04-520, petitioner was sentenced to five years in a "suitable facility" on charges of felony burglary, misdemeanor theft, and felony criminal possession of dangerous drugs. *Id.* at 28. The sentencing order in that case notes that "Cause No. DC-06-294 is to run consecutively to this cause." *Id.*

Finally, in Case No. DC-06-103, petitioner was sentenced to five years in "suitable placement" on charges of felony theft and criminal possession of dangerous drugs, and six months on charges of misdemeanor theft and driving while his license was suspended or revoked. *Id.* at 30. The sentencing order in that case further provides that "these counts shall run concurrently with each other and concurrently with Case No. DC-04-520." *Id.*

Petitioner began serving his state sentences on December 18, 2006, the date on which he was sentenced. He received credit for time served from the date of his arrest on May 30, 2006 until December 17, 2006, totaling 203 days of credit. Dckt. No. 13 at 4.

On May 16, 2007, petitioner was temporarily taken into federal custody by the United States Marshals Service on a federal Writ of Habeas Corpus Ad Prosequendum in connection with his federal criminal proceedings. Dckt. No. 14 at 4; Dckt. No. 14-1 at 4. On November 21, 2007, petitioner was sentenced in his federal case in the United States District Court for the District of Montana to 84 months in prison. Dckt. No. 14 at 9-10. His 84 month sentence was ordered "to run consecutively to defendant's sentence in Missoula County District Court docket # DC-04-520 and concurrently to docket #s DC-06-103 and DC-06-294." *Id.* at 10. On November 28, 2007, following sentencing in federal court, petitioner was returned to the state of Montana to complete his Montana state sentences. Dckt. No. 14 at 4; Dckt. No. 14-1 at 5.

Petitioner was paroled from state custody on February 25, 2009. Dckt. No. 14 at 4-5; Dckt. No. 13 at 4; Dckt. No. 14-1 at 5. He was taken into custody that day by the United States Marshals Service and incarcerated at Herlong. Dckt. No. 14 at 4-5; Dckt. No. 14-1 at 5. The BOP determined that petitioner's 84 month federal sentence commenced on February 25, 2009, the day he was transferred to Herlong, and that he was eligible to be released on April 1, 2015, via good conduct time.

### 2. Petitioner's Arguments

Petitioner claims that the BOP has miscalculated the date his federal sentence began to run and, therefore, his eligible release date. Petitioner's own calculation is that his federal sentence commenced on May 30, 2006,[1] and that his release date should be recalculated accordingly. Dckt. No. 1 at 8. He argues that this is what the federal sentencing order states and what the United States District Judge intended when he ordered that his federal sentence would run concurrently to Case No. DC-06-294. *Id.*

---

[1] Throughout the petition, including in the argument referred to here, petitioner recites the date "May 18, 2006." In the traverse, petitioner explains that any reference in the petition to "May 18, 2006" is in error and that the court should substitute the date "May 30, 2006," which is when he was arrested on the Montana state charges. Accordingly, this court will use the date May 30, 2006 instead of May 18, 2006 when explaining petitioner's arguments.

5

1   Petitioner acknowledges that the federal sentencing order appears to be "contradictory."
2  *Id.* Specifically, he argues that if his federal sentence ran "consecutively" to case No. DC-06-
3  103, as the sentencing order states, it did not commence until February 25, 2009, because this
4  was the date he was paroled ("DC-06-103 ends with parole on February 25, 2009."). *Id.* On the
5  other hand, if his federal sentence ran "concurrently" with case No. DC-06-294, it commenced
6  on May 30, 2006, the date he began serving his sentence on case No. DC-06-294. Petitioner
7  states that "there is no easy method to determine the Federal Court's intent" and that
8  "intervention and interpretation" by this court is required to resolve any questions as to the intent
9  of the federal sentencing judge. *Id.* Petitioner argues, however, that any ambiguity in the federal
10 sentencing order must be resolved in favor of his own calculation of when his federal sentence
11 commenced and when it will be completed.

12   Petitioner informs this court that he chose not to challenge his sentence in his direct
13 appeal because he "believed that the sentence was fair when run concurrent with the state
14 charges and commencing on May [30], 2006." *Id.* at 9. He states that "this was how the
15 sentence was described by the sentencing court to him and Petitioner felt the matter settled." *Id.*
16 However, he explains that when he later received his "Sentence Computation Sheet," he
17 discovered that "the BOP had interpreted the order completely differently with a 'start date' of
18 February 25, 2009." *Id.* at 10. Petitioner requests "an 'Amended Judgment and Commitment
19 Order' clarifying the start date of his federal sentence as May [30], 2006." *Id.*

20   Petitioner has filed several pages from his federal sentencing transcript in support of his
21 arguments regarding the computation of his sentence. Dckt. No. 15 at 5-7. He contends that the
22 judge's intent that his federal sentence commence during the service of his state sentences is
23 clear from the judge's remarks. Those remarks are as follows:

24  THE COURT: All right. Mr. Van de Wetering, what's the
    government's position?
25
    MR. VAN de WETERING: Well, your Honor, I'm not aware of
26  case law that requires the Court to sort of open that door to allow

6

> credit. If that's the case, I certainly don't object to it. But I agree with the Court's initial observation that really it's the BOP's call and I don't think this is the forum for making that determination.
>
> THE COURT: Right. Well, I think that it's been my experience, and it's my understanding of the law, that as it relates to credit for time in federal custody, it's a matter that is determined by the Bureau of Prisons.
>
> I have no objection to Mr. Goble receiving credit for any time that he's been in federal custody. He was writted into federal custody on May 17th, 2007, but it is my understanding that the way the BOP has interpreted the regulations, as well as the statutes, that they don't count that as federal time. So I think that probably the remedy for that isn't to resolve it here, it's to see whether or not they give him any credit and then, if there's a problem with it, to go through the regulatory and/or other legal processes to get that credit.

*Id.* at 6-7.

> And here, there is a policy statement that Mr. Arvanetes has mentioned. You are currently incarcerated for a term of five years on that Missoula County conviction, that's CDC 04520. That was based upon the revocation of your probation. But the conduct involved here was not the basis for that revocation.
>
> Additionally, you're serving a concurrent five-year sentence under Docket No. DC 06103 and a consecutive five-year term under DC 06294, which are based upon identical conduct to the instant offense.
>
> And pursuant to the provisions of 5G1.3(c), under the guidelines and the policy statements, the Court may impose a sentence concurrently, partially concurrently, consecutively to the undischarged term of imprisonment. And I think that guideline applies.
>
> The comment says subsection (c) applies in cases in which the defendant was on federal or state probation, parole or supervised release at the time of the instant offense and has had such probation, parole or supervised release revoked.
>
> Consistent with the policy statements set forth in application note four of subsection (f) of 7B1.3, the commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.

////

7

> That raises a situation here where, I believe, part of the sentence should be consecutive and then concurrent with other aspects of the sentence that was imposed.
>
> So if you would approach the lectern, along with your counsel.
>
> (Whereupon, Mr. Arvanetes and Defendant Goble approached the lectern.)
>
> THE COURT: Derrick Ellison Goble, pursuant to the authority vested in me by the Constitution of the United States and the laws enacted by the Congress of the United States as it relates to this particular case, and as those have been interpreted by the United States Supreme Court and the Ninth Circuit Court of Appeals, it's my obligation to impose sentence.
>
> I have stated what my thinking is as it relates to the factors set forth in 18 U.S.C. Code 3553(a) and I believe that a low and guideline sentence is appropriate.
>
> It is my judgment that Derrick Ellison Goble be committed to the custody of the Bureau of Prisons for a term of 84 months.
>
> Now, this sentence will run consecutively to your sentence in Missoula County District Court, Docket No. DC 04520 and concurrently to Docket Nos. DC 06103 and DC 06294.
>
> I am going to recommend that you be allowed to participate in the 500-hour drug treatment program if you are eligible.

*Id.*

Petitioner summarizes his arguments challenging the computation of his federal sentence as follows:

> The bottom line to this argument is that a District Court Judge ran the instant sentence concurrent to a state sentence with a starting date of May 30, 2006, which coincides with the incarceration date of the Petitioner. Petitioner believes that his instant federal sentence began on May 30, 2006 based on the oral pronouncement of his sentencing judge.

*Id.* at 3. Petitioner suggests that the "matter be ordered back to the sentencing court for a clarification." *Id.*

////

////

8

### 3. Respondent's Arguments

Respondent construes petitioner's arguments as a request for additional credits against his federal sentence for time spent in state custody. He argues that petitioner's sentence has been correctly calculated in accordance with applicable federal law and policy and that petitioner's federal sentence commenced on February 25, 2009, when he was paroled on his state sentences and taken into exclusive federal custody. Dckt. No. 13 at 5-7. According to respondent, state authorities had primary jurisdiction over petitioner until he was paroled on his state charges. Therefore, his federal sentence could not begin to run prior to the date that he was paroled. *Id.* Respondent also explains that petitioner is not entitled to credit against his federal sentence for the time spent in federal custody pursuant to the federal writ of habeas corpus ad prosequendum because his status as a state prisoner had not changed. *Id.* at 6. Respondent argues that petitioner's federal sentence did not start to run until the "state authorities relinquish[ed] [petitioner] on satisfaction of the state obligation." *Id.* In support of his arguments in this regard, respondent has filed the declaration of Alan Ray, Management Analyst at the Designation and Sentence Computation Center in Grand Prairie, Texas. Dckt. No. 14 at 2-7. Mr. Ray states that he has "personally reviewed [petitioner's] sentence computation for accuracy and found it to be correct and computed in accordance with BOP policy and applicable statutes." *Id.* at 6.

### 4. Petitioner's Traverse

In the traverse, petitioner states that respondent has misunderstood the thrust of his arguments. He explains that the only issue in this case is the intention of the federal sentencing judge with respect to the date his federal sentence should begin to run. Petitioner does not disagree with respondent's arguments regarding how sentencing is calculated under normal circumstances. However, he argues that the intent of the federal sentencing judge in this case should prevail over BOP regulations that govern the sentences of other federal prisoners.

////

Petitioner argues that BOP rules and regulations are "of no validity when faced with the clear and *binding authority* of a Federal District Court Judge." Dckt. No. 15 at 2 (emphasis in original). He also argues that "the muddled arguments of a BOP Program Statement do not have the authority of a federal court." *Id.* Petitioner explains that the "critical point in this action are the actual words used by the sentencing judge and the resultant confusion caused by the contradictory use of the terms 'concurrent' and 'consecutive.'" *Id.* Petitioner explains that, based on the federal sentencing judge's order that his sentence would run *concurrently* with Docket Nos. DC 06-103 and DC 06-294, he "believed that his federal sentence ran concurrently with his state sentence under DC-06-294 which began on May 30, 2006, the date of his original arrest/incarceration." *Id.*

### 5. Administrative Decisions on Petitioner's Challenges to his Sentence

Petitioner raised his challenges to the calculation of his federal sentence on December 20, 2010, in a prison form entitled "Request for Administrative Remedy." Dckt. No. 1 at 12. The BOP denied petitioner's request for a recalculation of his federal sentence in a response signed by the warden. The warden explained:

> This is in response to your Request for Administrative Remedy dated December 20, 2009 [sic], wherein you allege you are entitled to receive credit towards your sentence from November 21, 2007.
>
> An investigation into this matter reveals that while you were in the custody of the State of Montana, you were taken into federal custody on a *Federal Writ of Ad Prosequendum* from May 16, 2007 through November 28, 2007. Although you were in federal custody, the Montana state authorities maintained jurisdiction, therefore, this time in custody was awarded towards your Montana state sentence. Prior custody time credit is controlled by 18 U.S.C. § 3585(b), and states "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – that has not been credited against another sentence."
>
> Furthermore, although the federal Judge ordered your federal sentence to run concurrent to Missoula County District Court docket # DC-04-103 and DC-06-294, he ordered your 84 month sentence to run consecutive to docket # DC-04-520. You paroled from the Montana Department of Corrections on 02-25-2009, at

10

>which time your federal sentence commenced. As a result, your
>computation has been computed correctly.
>
>In view of the above, there is no basis for relief; and your request
>for Administrative Remedy is denied.

*Id.* at 13.

Petitioner appealed this decision to the Regional Director of the U.S. Bureau of Prisons. Dckt. No. 14-3 at 6. The Regional Director also denied petitioner relief, stating in pertinent part as follows:

>This is in response to your Regional Administrative Remedy Appeal of the Warden's response dated February 12, 2010. You claim the federal court recommended you be given credit for time spent in the primary custody of the State of Montana be applied to your federal sentence.
>
>We have investigated your appeal and agree with the Warden's response to you. While in the primary custody of the State of Montana, Department of Corrections, you were released to the United States Marshals Service via a writ of habeas corpus on May 16, 2007. You were sentenced in federal court on November 21, 2007, to a term of 84 months. This term was ordered to run concurrent to docket numbers DC-06-103 and DC-06-294. However, it was also ordered to be served consecutive to docket number DC-04-520 out of Missoula County District Court. The term imposed under this docket number or state term, became controlling state term. You were paroled to federal authorities from this term on February 25, 2009, at which time your federal sentence began to run. Your claim that the federal court granted you jail credit during sentencing is not correct. No such credit was recommended according to your federal Judgment and Commitment Order. Bureau of Prisons policy directs us to treat any order that recommends credit that is not authorized as surplus language. Accordingly, credit will not be given under these conditions. The credit time in question was credited to your state sentence.
>
>Title 18 U.S.C. 3585(b), *Credit for Prior Custody*, states, "Defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." Program Statement 5880.28, *Sentence Computation Manual -CCCA*, states "Time spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting presentence time. The primary reason for 'writ' custody is not the federal charge.

11

>    The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody."
>
>    Based on the above information, your request for administrative remedy is denied.

*Id.* at 7.

On May 12, 2010, petitioner appealed the Regional Director's decision to the Administrator of National Inmate Appeals. *Id.* at 9. Petitioner made the following arguments:

>    The Regional denial once again cites the language of the court in a manner that most benefits the BOP in that the sentence remains unchanged. The denial cites an unnumbered/untitled BOP policy to treat any "unauthorized" credit as "surplus language." It is highly unlikely that any United States District Judge regards the wording in his orders as "surplus language."
>
>    The order is difficult to interpret and thus the cause of the conflict in the positions presented in this grievance. The proper and fair remedy is quite simple: – The BOP should on its own motion contact the sentencing judge and ask that he clarify the language in the order. Only by determining the "intent of the sentencing judge" can the matter be resolved without the unnecessary and time consuming formality of an action under 28 USC 2241.

*Id.* at 9.

The Administrator denied petitioner's appeal, reasoning in pertinent part as follows:

>    This is in response to your Central Office Administrative Remedy Appeal in which you request the application of custody credit against your federal sentence starting with November 21, 2007. We essentially interpret such requests as a request for "nunc pro tunc" or retroactive concurrent designation to the state for service of your federal sentence. You make this request, claiming the court intended your sentences to receive credit for time spent serving your state sentences.
>
>    We thoroughly reviewed your request and relevant file documentation. Records show your federal sentence of 84 months was imposed on November 21, 2007. The Court ordered its term to run concurrently with the sentences imposed on December 18, 2006, in Missoula County District Court in docket numbers DC-06-103 and DC-06-294, but consecutively to the sentence imposed in docket number DC-04-520. You were released from state custody via parole on February 25, 2009. At this point, the state relinquished its jurisdiction and your federal sentence commenced in accordance with 18 USC § 3585(a).

12

> Given the fact the State of Montana imposed its sentences prior to the federal sentences and the court was obviously aware of your state sentences, you are not eligible for consideration of a retroactive concurrent designation to the states. That is, the federal court ordered its sentence consecutive to an undischarged state term.
>
> The application of prior custody credit is governed by § 3585(b) and prohibits such credit when it has been applied against another sentence. Our information indicates your state term was adjusted with the credit you seek. You have not demonstrated otherwise.
>
> We conclude your 84-month federal sentence has been executed correctly and your release date calculated in accordance with applicable statutes, the expressed intent of the sentencing court, and Program Statement 5880.28, *Sentence Computation Manual (CCCA)*. You have not provided any information that has not been considered previously. Your appeal is denied.

*Id.* at 10.

### 6. Analysis

The sole issue before this court is whether petitioner's release date has been correctly calculated by the BOP. As explained above, the authority to compute a federal prisoner's sentence is delegated to the Attorney General, who exercises this authority through the BOP. *Wilson*, 503 U.S. at 334-35. At sentencing, the district court cannot determine the precise amount of credit a federal offender should receive. *Id.* at 335. Rather, it is the BOP's responsibility to administer the offender's sentence and make the appropriate calculations. *Id.* "Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody." *United States v. Smith*, 812 F. Supp. 368, 370 (E.D.N.Y. 1993).

A federal sentence commences "on the date the defendant is received in custody . . . to commence service of sentence at the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). In this regard, the Ninth Circuit has recently joined other circuits in noting that:

////

13

> courts have interpreted § 3585(a) to mean that a federal sentence cannot begin *before* the defendant has been sentenced in federal court. *See United States v. Gonzalez*, 192 F.3d 350, 355 (2d Cir. 1999) (holding that a district court cannot "backdate" a federal sentence to the beginning of a state prison term on related state charges.); *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980) ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.")

*Schleining v. Thomas*, 642 F.3d 1242, 1244 (9th Cir. 2011). Pursuant to these authorities, the earliest possible date petitioner's federal sentence commenced is November 21, 2007, the date he was sentenced in his federal criminal case. Even if the federal sentencing judge intended that petitioner's federal sentence begin to run on a date preceding November 21, 2007, he was without authority to make such an order. *Id.* Under controlling Ninth Circuit law any statement by the federal court prescribing when a sentence should begin to run is "mere surplusage." *Taylor v. Reno*, 164 F.3d 440, 446 (9th Cir. 1998) ("The district court did not have the power to commence [petitioner's] federal sentence, regardless of whether the court intended to do so and regardless of what the court said"). *See also Vaughn v. Smith*, No. CV 11-0852-PHX-JAT (MHB), 2012 WL 996542 (D.Az. March 23, 2012) ("Even if the sentencing court's order on January 13, 2012 made it absolutely clear that it was ordering, rather than recommending, a start date of December 17, 2002, it would not change the fact that the sentencing court was without power to make such an order.").

When petitioner was sentenced in federal court on November 21, 2007, he was still in state custody and under the primary jurisdiction of the state of Montana. This is because the sovereign which first arrests an offender has primary jurisdiction over the offender unless that sovereign relinquishes it to another sovereign by, for example, bail release, dismissal of the state charges, parole release, or expiration of the state sentence. *Reynolds v. Thomas*, 603 F.3d 1144, 1152 (9th Cir. 2010) ("Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration"); *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir. 1991) (same); *Taylor*, 164 F.3d at 444 n.1 ("the term 'primary jurisdiction'

in this context refers to the determination of priority of custody and service of sentence between state and federal sovereigns . . . and simply means that the sovereign lacks priority of jurisdiction for purposes of trial, sentencing and incarceration"); *United States v. Graham*, 538 F.2d 261, 265 (9th Cir. 1976) ("Unless time is served in federal custody, it does not count as credit for time served under a federal sentence").

Petitioner was returned to state authorities to serve out the remainder of his state sentence after the district court pronounced sentence on his federal charges. The state did not relinquish jurisdiction over petitioner, nor did the BOP designate the state facility for service of petitioner's federal sentence. *See Reynolds*, 603 F.3d at 1150 (The BOP may issue a nunc pro tunc order designating a state prison as the facility for service of a federal sentence); *Smith*, 812 F. Supp. at 370 ("When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau agrees to designate the state facility for service of the federal sentence"). Rather, the BOP waited until petitioner had completed his state sentence to take him into federal custody. Under these circumstances, the state of Montana had primary jurisdiction over petitioner from the time of his arrest on state charges until he received parole on his state sentences.[2] Accordingly, petitioner's federal sentence did not begin to run until February 25, 2009, when he was paroled on his state sentence and arrived at Herlong to serve his federal sentence. *See Green v. Woodring*, 694 F. Supp. 2d 1115, 1121 (C.D. Cal. 2010) ("In deciding when Petitioner legally began serving his

---

[2] Petitioner's status as a state prisoner was not changed by his temporary removal to federal custody pursuant to the writ ad prosequendum. *Schleining*, 642 F.3d at 1245 n.2 ("[T]his court has held that the temporary transfer of a prisoner from state prison to the BOP's custody for purposes of federal prosecution does not interrupt his state custody."); *Reynolds*, 603 F.3d at 1152 (when a defendant is brought from state custody to appear in federal court pursuant to a writ of habeas corpus ad prosequendum, he is still primarily in state custody and the state's priority of jurisdiction remains uninterrupted); *Taylor*, 164 F.3d at 445 (transfer to federal court pursuant to a writ of habeas corpus ad prosequendum does not transform a state prisoner into a federal prisoner); *Brewer*, 923 F.2d at 1365, 1367 ("When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly."); *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C.Cir. 1978) (same).

federal sentence, the point at issue is the date on which he was 'received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served.'").

Petitioner is not entitled to credits against his federal sentence for any of the time he spent in state custody. The statute governing credits and the calculation of a federal term of imprisonment provides as follows:

> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b). All of the time petitioner was in state custody, from May 30, 2006, when he was arrested on state charges, until February 25, 2009, the date he was paroled, was credited toward his state sentence. Accordingly, he is not statutorily entitled to additional credit against his federal sentence for that same time period. 18 U.S.C. § 3585(b); *Wilson*, 503 U.S. at 337 ("[C]ongress made clear in 18 U.S.C. § 3585(b)] that a defendant could not receive a double credit for his detention time"); *Schleining*, 642 F.3d at 1244-45 ("18 U.S.C. § 3585(b) allows the BOP to grant a federal prisoner credit for time spent in state or federal custody before imposition of his federal sentence, but only if that term of pre-sentence imprisonment 'has not been credited against another sentence.'"); *Boniface v. Carlson*, 856 F.2d 1434, 1436 (9th Cir. 1988) (applying the predecessor to 18 U.S.C. § 3585 and concluding that "[s]ince the State of Florida gave [petitioner] credit on his state sentence for the period of time he was denied release [from state custody], he is not entitled to credit against his federal sentence for the same period of time"); *Vaughn*, 2012 WL 996542 at **3-4 (petitioner not entitled to federal credit for time he served in state custody before his federal sentence commenced); *Johnson v. Ives*, No. CIV S-10-0371

16

DAD P, 2011 WL 2962774 at **1-2 (E.D. Cal. July 19, 2011) (same); *United States v. Labeille-Soto*, 163 F.3d 93, 99 (2d Cir. 1998) ("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence."). The fact that petitioner's federal sentence was ordered to run concurrently to one of his state sentences does not change this result. *United States v. Burks*, No. 03-80681, 2009 WL 1664368 (E.D. Mich. June 15, 2009) ("The fact that Defendant's federal sentence was ordered to run concurrent to his state sentence does nothing to change the application of section 3585(b)"). *See also Grigsby v. Bledsoe,* 223 Fed. Appx. 486, 489 (7th Cir. 2007) (("[S]ince he obtained credit for this period from the state, he is not entitled to the same benefit from the BOP merely because his subsequent federal sentence was ordered to run concurrently").[3]

---

[3]   At least one court has noted that:

> This rule can be problematic when the defendant receives a state sentence that is to be served concurrently with the federal sentence. Trouble typically arises when the inmate serves part or all of his concurrent sentences in a state prison but, upon his release, federal authorities refuse to credit any of his time in state prison toward service of the federal sentence, citing § 3585(a) (or its predecessor, § 3568). In the past, this scenario sometimes resulted in an inmate being compelled, in essence, to serve his sentence a second time.
>
> * * *
>
> Some judges also have expressed concern that by manipulating the order or the location in which the sentences are served, i.e., whether the inmate initially commences service of his concurrent sentences in a state or federal prison, low-level prison officials can effectively override decisions of the state and federal sentencing courts (or, prior to 1984, the federal sentencing judge's recommendation) and decide for themselves how long the inmate remains in prison.

*Cozine v. Crabtree*, 15 F. Supp. 2d 997, 1004 (D.Or. 1998). Thus, in *Del Guzzi v. United States,* 980 F.2d 1269, 1271 (9th Cir. 1992), an inmate was forced to serve a seven year state term followed by a five year federal term, even though the state sentence was expressly ordered to run concurrently with the federal term. The petitioner contended that "the federal courts have the authority to credit him with time spent in state prison." *Id.* The court responded:

17

Petitioner suggests that "the proper analysis for this matter" is found in *United States v. Munoz-DeLa Rosa*, 495 F.2d 253, 256 (9th Cir. 1974), in which the Ninth Circuit held that a judge's oral pronouncement at a sentencing hearing controls over a conflicting written judgment. *Id.* at 256. Thus, in that case, the sentencing judge's oral pronouncement that defendant's new sentence for escape would run concurrently with his existing term controlled over the written judgment, which stated that the sentences were consecutive, even though the district judge later insisted that he never imposed concurrent sentences for escape and defense counsel conceded that the judge "probably misspoke." *Id.* at 254-56. *See also United States v. Zepeda*, 329 Fed. Appx. 647 (7th Cir. 2009) ("It is well-established that an oral pronouncement of sentence, if unambiguous, controls over a conflicting written one"); *United States v. Bonnanno*, 146 F.3d 502, 511 (7th Cir. 1998) ("If an inconsistency exists between an oral and the later written sentence, the sentence pronounced from the bench controls"). In this case, however, there is no conflict between the federal sentence pronounced by the federal judge in open court and the written judgment. Therefore, *Munoz-DeLa Rosa* is not on point and does not control the outcome here.

After a careful review of the record, it appears to this court that the BOP's calculation of petitioner's sentence does not violate federal law. Accordingly, for all of the reasons set forth above, petitioner is not entitled to relief on his challenge to the computation of his sentence.

////

////

////

---

> We are aware, however, of no such authority. To the contrary, we have no authority to violate the statutory mandate that federal authorities need only accept prisoners upon completion of their state sentence and need not credit prisoners with time spent in state custody.

*Id.* In enacting 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time." *Wilson*, 503 U.S. at 337.

### B. Ground Two

In his second ground for relief, petitioner claims that "'Good time credit' is incorrect based on an inaccurate start date for the federal conviction." Dckt. No. 1 at 3. Essentially petitioner is arguing that if the instant petition is resolved in his favor, the calculation of his good time credits would also have to be recalculated. *Id.* at 9. Respondent agrees that if the commencement of petitioner's federal sentence is changed as a result of the arguments made in the instant petition, petitioner's "good conduct time credit would automatically be adjusted accordingly." Dckt. No. 13 at 2.

Because this court has concluded that petitioner should not prevail on his challenge to the calculation of his federal sentence, his good time credits need not be re-calculated. Accordingly, petitioner is not entitled to relief on his second claim.

### VI. Conclusion

Accordingly, IT IS ORDERED that the Clerk of Court is directed to substitute J. E. Thomas as the respondent in this matter.

Further, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing

////

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 13, 2012.

　　　　　　　　　　　　　　　　/s/ Edmund F. Brennan
　　　　　　　　　　　　　　　　EDMUND F. BRENNAN
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE